Anita Y. Milanovich (MSB #12176)
Rachel K. Meredith (MSB #11552)
Office of the Governor
1301 E. 6th Avenue
PO Box 200801
Helena, MT 59620-0801
Phone: 406-444-5503
Email: anita.milanovich@mt.gov
         rachel.meredith@mt.gov
*Counsel for Petitioner*

Brian C. Bramblett (MSB # 6560)
Chief Legal Counsel
Montana Department of Natural
Resources and Conservation
PO Box 201601
Helena, MT 59620-1601
Telephone: (406) 444-9758
Email: bbramblett@mt.gov
*Counsel for Petitioner*

Lindsey Simon (MSB #34338757)
Legal Counsel
Montana Department of Livestock
PO Box 202001
Helena, MT 59620-2001
Phone: (406) 444-7631
Email: lindsey.simon3@mt.gov
*Counsel for Petitioner*

Jeff Hindoien (MSB #4101)
Chief Legal Counsel
Alexander R. Scolavino III (MSB
#68806621)
Montana Department of Fish, Wildlife
and Parks
PO Box 200701
Helena, MT 59620-0701
Phone: (406) 444-4047
Email: jeff.hindoien@mt.gov
         Alexander.scolavino@mt.gov
*Counsel for Petitioner*

Zach Coccoli (MSB #39519755)
Acting Chief Legal Counsel
Montana Department of Agriculture
302 North Roberts
Helena, MT 59620
Phone: (406) 444-5402
Email: Z.coccoli@mt.gov
*Counsel for Petitioner*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STATE OF MONTANA, BY AND THROUGH ITS GOVERNOR, MONTANA DEPARTMENT OF AGRICULTURE, MONTANA DEPARTMENT OF LIVESTOCK, MONTANA DEPARTMENT OF NATURAL RESOURCES AND | Civ. No. CV-24-107-GF-JTJ<br><br>**COMPLAINT FOR PETITION FOR REVIEW OF AGENCY ACTION** |

CONSERVATION, AND MONTANA
DEPARTMENT OF FISH, WILDLIFE AND
PARKS,
                    Petitioner,
        v.
DEB HAALAND, in her official capacity as
Secretary of the United States Department of
the Interior; THE UNITED STATES
DEPARTMENT OF THE INTERIOR;
TRACY STONE-MANNING, in her official
capacity as Director of the United States
Bureau of Land Management; THE UNITED
STATES BUREAU OF LAND
MANAGEMENT, an agency of the United
States Department of the Interior; and KATHY
TRIBBY, Acting Field Manager of the Malta
Field Office of the United States Bureau of
Land Management,
                    Respondents.

Petitioner State of Montana, by and through its Governor, Montana

Department of Agriculture (MAGR), Montana Department of Livestock (MDOL),

Montana Department of Natural Resources and Conservation (DNRC), and

Montana Department of Fish, Wildlife and Parks (MFWP) (collectively, State,

Montana, or Petitioner) hereby petitions the Court for review of the United States

Department of the Interior's (DOI) Office of Hearings and Appeals' (OHA)

decision denying stay of the United States Bureau of Land Management's (BLM)

*Notice of Final Decision* (*BLM Decision*) pending administrative appeal.

Petitioner is aggrieved by the Respondents because OHA's failure to stay the *BLM*

*Decision* pending appeal fails to comply with federal law and unlawfully interferes with Petitioner's ability to carry out its constitutional and statutory duties.

## I.   **<u>INTRODUCTION</u>**

1.     On July 28, 2022, BLM released its *BLM Decision* allowing American Prairie Reserve (APR) to graze bison and modify fence on BLM grazing allotments in Phillips County, Montana. Montana and others initiated an administrative appeal of the *BLM Decision* on the basis that it violated the Taylor Grazing Act (TGA), Federal Land Policy and Management Act (FLPMA), Public Rangelands Improvement Act (PRIA), National Environmental Policy Act (NEPA), and implementing regulations. Montana simultaneously petitioned OHA for a stay of the decision pending appeal, which was denied. OHA concluded that APR could implement a fencing and grazing scheme different from the *BLM Decision,* which excluded Montana's State Trust Lands (STL), purportedly preventing harm to Montana.

2.     OHA's decision denying the requested stay bureaucratically steamrolls Montana with fencing and grazing schemes that were never subject to NEPA, that contradict the *BLM Decision*, and which ultimately fail to prevent APR's placement of bison on STL. OHA's denial is an untenable affront to the public interest and creates immediate and irreparable harm to Montana. OHA's

denial of the requested stay is a violation of 43 C.F.R. §4.471 and BLM regulation, NEPA, and the Administrative Procedures Act (APA), and should be reversed.

II.     **JURISDICTION AND VENUE**

3.      Jurisdiction is proper under 28 U.S.C. §1331 (federal question) because this action arises under the laws of the United States, including NEPA, 42 U.S.C. §§4321 *et seq.*, TGA, 43 U.S.C. §§315 *et seq.*, FLPMA, 43 U.S.C. §§1701 *et seq.*, and PRIA, 43 U.S.C. §§1901 *et seq.*, and implementing regulations; APA, 5 U.S.C. §§701 *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq.* An actual, justiciable controversy exists between the parties, and the requested relief is therefore proper under 28 U.S.C. §§2201-2202 and 5 U.S.C. §§701-06.

4.      Venue is proper in this Court under 28 U.S.C. §1391 because all or a substantial part of the events giving rise to the claims herein occurred within this judicial district, Respondents are located in the district, and the affected public lands and resources and agency records in question are located in this judicial district.

5.      The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. §702.

III.    **PARTIES**

6.      As governor of the State of Montana, Petitioner GREG GIANFORTE is the "sole official organ of communication" between Montana government and

the government of the United States. Mont. Code Ann. §2-15-201(3). As governor, he is vested with the executive power and "shall see that the laws are faithfully executed." Mont. Const. art. VI, §4(1). He is "the chief executive officer of the state," tasked with "formulat[ing] and administer[ing] the policies of the executive branch of state government." Mont. Code Ann. §2-15-103. He "has full power [to] supervis[e], approv[e], direct[ ], and appoint" all departments and their units, and "shall…supervise the official conduct of all executive and ministerial officers…." Mont. Code Ann. §§2-15-103, 2-15-201(a).

7.      The governor is also a member of the State Board of Land Commissioners, a constitutionally created body vested with the authority to direct, control, lease, exchange, and sell school lands granted to the State for the benefit of various state educational institutions. Mont. Const. art. X, §4; Mont. Code Ann. §77-1-202. In the exercise of these authorities, "the guiding principle is that these lands and funds are held in trust for the support of education and for the attainment of other worthy objects helpful to the well-being of the people of this state as provided in The Enabling Act." Mont. Code Ann. §77-1-202(1).

8.      Petitioner DNRC is tasked with the administration of STLs. *See generally* Mont. Code Ann. §77-1-101, *et seq.* "STL" refers to "land or property interests held in trust by the state: (a) under Article X, sections 2 and 11, of the Montana Constitution; (b) through The Enabling Act of Congress (approved

February 22, 1889, 25 Stat. 676), as amended; and (c) through the operation of law for specified beneficiaries." Mont. Code Ann. §77-1-101(9). Under the direction of the State Board of Land Commissioners, DNRC has the duty to oversee, lease, and manage all STL, including the parcels within the grazing allotments that are the subject of this appeal. Mont. Code Ann. §77-1-301(1).

9.      Both Governor Gianforte and DNRC have a fiduciary obligation to manage STLs for the benefit and support of Montana's common schools. Act of February 22, 1889, ch. 180, 25 Stat. 676 (1889); Mont. Const. art. XVII, §1 (1889); Mont. Const. art. X, §11 (1973); *Montanans for the Responsible Use of the School Trust v. St. ex rel. Bd. of Land Comm'rs (MONTRUST)*, 1999 MT 263, ¶¶13-14, 296 Mont. 402, 989 P.2d 800. Incursions and infringements upon the State's managerial prerogatives on STLs are unconstitutional. *In re Powder River Drainage Area (Pettibone)*, 216 Mont. 361, 702 P.2d 948 (1985); *Jerke v. St. Dept. of Lands*, 182 Mont. 294, 597 P.2d 49 (1979).

10.      Petitioner MAGR shall "encourage and promote the interests of agriculture, including horticulture and apiculture, and all other allied industries…." Mont. Code Ann. §80-1-102(1). MAGR gathers and disseminates information concerning "supply, demand, prevailing prices, and commercial movement of farm products" in the State of Montana. Mont. Code Ann. §80-1-102(7). MAGR has the

authority to enforce all laws for the protection and regulation of Montana

agriculture. Mont. Code Ann. §80-1-102(13).

11.     Petitioner MDOL shall "exercise general supervision over and, so far

as possible, protect the livestock interests of the state from theft and disease…."

Mont. Code Ann. §81-1-102(1). To this end, MDOL oversees testing and

vaccination, branding and identification, and containment requirements for

Montana livestock. *See generally* Mont. Code Ann. §§81-1-101, *et seq.*

12.     Petitioner MFWP "shall supervise all the wildlife, fish, game, game

and nongame birds, waterfowl, and the game and fur-bearing animals of the

state…." Mont. Code Ann. §87-1-201(1). "[T]he department shall enforce all the

laws of the state regarding the protection, preservation, and propagation of fish,

game, fur-bearing animals, and game and nongame birds within the state." Mont.

Code Ann. §87-1-201(2).

13.     Respondent DOI is an executive branch department of the United

States, charged with managing public lands and resources, including those at issue

in this action, in accordance with federal law and regulation. This responsibility

includes providing oversight and direction to its agencies in their implementation

of federal law and regulation.

14.     Respondent DEB HAALAND is the Secretary of DOI and has the

statutory authority and responsibility to comply with federal law in the

management of the federal public lands at issue in this litigation. Respondent

Haaland is sued in her official capacity.  OHA exercises the delegated authority of

the Secretary of the Interior to conduct hearings and decide appeals from decisions

of the bureaus and offices of the DOI.

15.     Respondent BLM is an agency or instrumentality of the United States,

situated within DOI, and is charged with administering the federal public lands in

the Whiterock Coulee, Flat Creek, French Coulee, Garey Coulee, East Dry Fork,

Telegraph Creek, and Box Elder Allotments in the North Central Montana District,

in accordance with NEPA, FLPMA, TGA, PRIA, APA, and other applicable laws.

16.     Respondent TRACY STONE-MANNING is the Director of BLM.

Respondent Stone-Manning exercises supervisory authority over land and resource

management decisions affecting all public lands under the administration of BLM

and is directly responsible for implementing the laws challenged herein.

Respondent Stone-Manning is sued in her official capacity.

17.     Respondent KATHY TRIBBY is Field Manager of the BLM's Malta

Field Office. Respondent Tribby is charged with administering the public lands in

the allotments implicated in this action, in accordance with federal law.

Respondent Tribby is sued in her official capacity.

## IV.   PROCEDURAL AND FACTUAL BACKGROUND

### A. **BLM's NEPA Process**

18.    On September 24, 2019, APR submitted a grazing proposal pertaining

to seven BLM grazing allotments: Box Elder, Telegraph Creek, Flat Creek,

Whiterock Coulee, East Dry Fork, French Coulee, and Garey Coulee Allotments.[1]

The proposal sought the following modifications to existing BLM livestock

grazing permits held by APR:

- The conversion from livestock grazing to bison and cattle grazing.
- Year-long continuous bison grazing on three allotments (Box Elder, Telegraph, and French Coulee) and modified periods of use (4/1-9/30) on remaining allotments.[2]
- Removal of specific interior fencing.
- Construction, reconstruction, or modification of specific interior and exterior fencing.
- The combination of several allotment pastures.

19.    On July 1, 2021, BLM issued a *Draft Environmental Assessment* and

*Draft Finding of No Significant Impacts*, to which the Petitioner submitted

comment on September 28, 2021. An *Environmental Assessment* (*EA*) issued,

along with a *Finding of No Significant Impact*, and *Public Comment Report* issued

---

[1] APR submitted its first proposal in January 2017 for BLM's consideration, seeking to convert livestock grazing permits to accommodate bison grazing and fence modification/removal on over 222,000 BLM acres and over 26,000 STL acres. In November of 2017, that proposal was revised to seek similar action on 18 grazing allotments in BLM's Glasgow, Lewistown, and Malta Field Offices and the Upper Missouri River Breaks National Monument, implicating over 260,000 BLM acres and over 29,000 STL acres. BLM conducted scoping on this proposal, but the proposal was officially withdrawn with APR's September 24, 2019 proposal.
[2] Year-round bison grazing had previously been approved on Box Elder and Telegraph.

on March 25, 2022. The *EA* analyzed four alternatives for each allotment: Alternative A (current management), Alternative B (applicant proposed alternative), Alternative C (combining bison grazing with current management practices), and Alternative D (no grazing). On March 29, 2022, BLM issued a *Notice of Proposed Decision*. The *BLM Decision* issued July 28, 2022.

### B. <u>Procedural Background</u>

20.    Montana initiated an administrative appeal of the *BLM Decision* to OHA[3] on August 26, 2022, asserting that the *BLM Decision* violated the TGA, FLPMA, PRIA, NEPA, and BLM's own regulations.[4,5] Montana simultaneously petitioned for a stay of the decision pending appeal. 43 C.F.R. §4.471. Pursuant to 43 C.F.R. §4160.4(b)(1), a stay of the *BLM Decision* permits BLM to "continue to authorize grazing under the permit or lease, or the relevant term or condition thereof, that was in effect immediately before the decision was issued…." To that end, the requested stay would have preserved the status quo existing before the *BLM Decision,* including continued bison grazing on those allotments already authorized for that use (*i.e.*, Telegraph and Box Elder).

---

[3] OHA is part of DOI.  It has two levels of hearings and appellate review: 1) the Departmental Cases Hearings Division (DCHD), where an administrative law judge review grazing appeals, 43 C.F.R. §§4.470 *et seq*, and 2) the Interior Board of Land Appeals (IBLA), hearing appeals from DCHD, 43 C.F.R. §§4.410 *et seq*.
[4] The substantive merits of these claims are presently pending before DCHD.
[5] The State of Montana by and through the Attorney General's Office, the North and South Phillips County Cooperative State Grazing Districts, and the Montana Stockgrowers Association also appealed the *BLM Decision* to OHA. These appeals were consolidated by DCHD.

21.     On October 13, 2022, OHA's Departmental Cases Hearings Division (DCHD) issued an order denying the requested stay. In reviewing Montana's request to stay the *BLM Decision*, DCHD found that Montana had established a likelihood of success on the merits. Notably, the order concluded:

> Based on a preliminary review of the record, Appellants have raised significant doubts about the adequacy of BLM's analysis and the sufficiency of the public's opportunity to meaningfully participate in the process and inform BLM's ultimate decision with regards to fencing.

*DCHD Order*, 16 (Oct. 13, 2022), attached as Ex. A. The *DCHD Order* includes an extensive discussion of the importance of fencing, the fencing regime proposed by APR, and BLM's failure to adequately evaluate the proposed fencing on wildlife, the public, and the environment. *Id.* at 16-19.

22.     Nonetheless, DCHD concluded Montana ultimately failed to demonstrate "harm that is likely, immediate, and irreparable if a stay is not granted." *Id.* at 16-20, 40-41. DCHD found that there was no likelihood of immediate and irreparable harm to Montana's ability to meet its fiduciary obligations as trustee of STLs, and assertions to the contrary were undermined by an existing grazing authorization held by APR for STL on Box Elder. *Id.* at 40. DCHD's harm analysis was limited to Whiterock only, based on APR's representation that it planned to operate Flat Creek, Garey Coulee, and French Coulee as it had in the past, "for the foreseeable future…." *Id.* at 21.

23.     Pursuant to 43 C.F.R. §4.478(a), Montana appealed DCHD's order to the Interior Board of Land Appeals (IBLA) on November 14, 2022.[6] That appeal was fully briefed on January 23, 2023. Over 16 months later, IBLA issued an order affirming DCHD's denial of stay. *IBLA Order* (May 29, 2024), attached as Ex.B. The IBLA affirmed the limited scope of DCHD's harm analysis (to Whiterock), similarly finding that Montana could petition again "if and when circumstances change" and APR began to implement the *BLM Decision* on other allotments. *Id.* at 10. IBLA affirmed DCHD's conclusion that there was no likelihood of immediate and irreparable harm to STLs. *Id.* at 19. IBLA relied on representations by APR (*i.e.*, a declaration from APR Director of Bison Restoration, Scott Heidebrink (Heidebrink Declaration)) that it would take additional actions to keep bison off STLs implicated by the *BLM Decision*.

> In support, APR explains in detail the actions it will take to prevent unauthorized bison grazing on State trust lands within the Whiterock Coulee Allotment, as well as the three other allotments authorized for new bison grazing under the Final Decision. Although the Governor questions whether the actions APR intends to take will prevent unauthorized bison grazing on State trust lands, the Governor must show that unauthorized bison grazing is *likely* to occur. Because the Governor has not satisfied this burden of proof, the Governor has not show that the ALJ erred in ruling that there is no likelihood of immediate and irreparable harm to State trust lands.

---

[6] All appellants appealed the *DCHD Order* to IBLA. IBLA consolidated these appeals.

*Id.* (citing, in part, the Heidebrink Declaration at ¶¶22-35). However, the actions described by APR, and relied upon by IBLA, do not keep bison off STLs, were not analyzed in the *EA*, and expressly conflict with the *BLM Decision*.

24.    More critically, and as discussed below, APR has not kept its bison off STL and unauthorized bison use is occurring. APR has left gates open, allowing bison to access STL, and deliberately and repeatedly trailed bison across STL to access other allotment areas…a result that could have been foreseen had Respondents complied with NEPA.

C. **The *BLM Decision* and APR's Allotment Plans**

25.    APR's proposed plan, upon which IBLA concluded Montana failed to demonstrate "harm that is likely, immediate, and irreparable if a stay is not granted" was not evaluated by BLM or part of the alternative approved in the *BLM Decision*.

### *Whiterock Alternative B Approved in BLM Decision*

26.    The *BLM Decision* implements *EA* Alternative B for Whiterock. This alternative provides for conversion of cattle grazing to bison grazing, as well as variations in stocking numbers and periods of use. The *BLM Decision* authorizes removal of several interior fences "creating three pastures, instead of four." It further authorizes modification and reconstruction of "select interior and exterior fences" by "adding one electric wire." The decision states that "[c]hanges in

fencing will allow the allotment to be grazed in a three-pasture deferred rotation system where one pasture is deferred during the growing season each year."

27.     Whiterock contains STL, marked in blue on Figure A. At this time, APR is not authorized to graze bison on those STLs. As depicted in the *EA,* the STLs are fenced "in common" and are not fenced separately from BLM or APR land within the allotment. The *BLM Decision* removes even more of what little barrier fencing exists between STLs and other lands in the allotment (note blue fence lines marked for removal in Figure A).

28.     Bison released on Whiterock in accordance with the *BLM Decision* will access STLs, as there is no fencing confining them to BLM and private land. Figure A depicts the location of fences and modifications authorized by Alternative B's adoption.



Figure A: Excerpt from *EA* at Appx.A, page A-7, depicting Alternative B.

### *Whiterock Plan Relied on by IBLA*

29.     DNRC notified APR on October 27, 2022, that bison are not presently authorized on STLs contained in Whiterock or Flat Creek Allotment (Flat Creek) given pending challenges to the *BLM Decision*.[7] DNRC asked APR to provide its stocking plan for the BLM allotments during the pendency of the OHA appeal, and detail how it would prevent bison from grazing STLs on Whiterock and Flat Creek.

30.     On November 17, 2022, APR responded, stating that it had "no immediate plans" to graze bison on Flat Creek. On Whiterock, APR proposed leaving fences that the *BLM Decision* removes, constructing new fences the *BLM Decision* does not authorize, and creating a different pasture and rotation configuration than was authorized by the *BLM Decision.* The plan set forth in APR's November 17, 2022, correspondence described a use of Whiterock that was not analyzed or authorized in the *BLM Decision*.

31.     During IBLA proceedings, APR produced the Heidebrink Declaration, restating APR's plans to keep bison off STLs in Whiterock and explaining plans for exclusion on Flat Creek, French Coulee, and Garey Coulee. Like APR's November 2022 correspondence, the Heidebrink Declaration described fences not contemplated in the *BLM Decision*, adds fencing not analyzed

---

[7] To date, APR has not sought, nor been granted, authorization to graze bison on STLs in Garey Coulee or French Coulee.

or authorized in the *BLM Decision*, and leaves fences that the *BLM Decision* specifically removed. This new fencing scheme creates a pasture separate from the remainder of the allotment and which was not authorized in the *BLM Decision* or subject to NEPA review. The fencing combination planned by APR does not result in the "three pastures" dictated by the *BLM Decision*.

32.    IBLA relied on APR's modifications to conclude that it will successfully exclude bison from STL and prevent harm to Montana, and declined to issue the requested stay. Ex.B at 19. However, none of the alternatives considered by the *BLM Decision* included the fencing and grazing plan relied upon by IBLA to conclude that Montana would not suffer immediate and irreparable harm.

33.    On September 6, 2024, DNRC inspected STL on Whiterock. During that visit, DNRC discovered "numerous gates" in Section 16, T26N R29E were open, and there was evidence of animal trailing through the section. In an email sent to DNRC on September 9, 2024, Mr. Heidebrink explained away the gates as a staff misunderstanding, but conceded to deliberately trailing bison through the STL section throughout the summer. Again, per DNRC's October 27, 2022, letter to APR, bison are not authorized on STL.

### *Flat Creek Alternative B Approved in the BLM Decision*

34.     The *BLM Decision* implements *EA* Alternative B for Flat Creek. This alternative provides for the conversion of cattle grazing to bison grazing, as well as changes in stocking numbers and periods of use. The *BLM Decision* authorizes removal of several interior fences, creating "four pastures, instead of five." It further authorizes modification of other interior and exterior fences by adding one electric wire. The *BLM Decision* notes that "[c]hanges in fencing will allow Flat Creek to be grazed as a four-pasture rest-rotation system where one pasture is rested each year and one pasture is deferred during the growing season each year. The rest and deferred pastures will be different each year of the 4-year cycle."

35.     As depicted in the *EA,* Flat Creek also contains STLs, marked in blue on Figure B, which are fenced in common with BLM and APR land. At this time, APR is not authorized to graze bison on STLs. The *BLM Decision* authorizes electrification of existing fencing around the parcel, but keeps existing fence locations (marked in green). Bison released on Flat Creek in accordance with the *BLM Decision* will access STLs, as there is no fencing on the east or southern boundaries of the STL confining them to BLM and private land in the allotment. Figure B depicts the location of fences and modifications authorized by the *BLM Decision.*



Figure B: Excerpt from *EA* at Appx.A, page A-13, depicting Alternative B.

### ***Flat Creek Plan Relied on by IBLA***

36.     The Heidebrink Declaration produced during the proceedings before IBLA states that APR could successfully exclude bison from the STL in Flat Creek by electrifying existing fence, in accordance with the *BLM Decision*, and retaining additional fence. IBLA relied on these statements to conclude that APR will keep bison off STL, preventing harm to Montana. Ex.B at 19. However, the retained fencing does not border STL and leaves STL open to bison incursion from bordering BLM and APR lands.

37.     None of the alternatives considered by the *BLM Decision* included the fencing and grazing plan relied upon by IBLA to conclude that Montana would not suffer immediate and irreparable harm.

### ***French Coulee, Garey Coulee, and East Dry Fork Alternative C Approved in the BLM Decision***

38.     The *BLM Decision* implements Alternative C for French Coulee and Garey Coulee. This alternative provides for the conversion of cattle grazing to bison grazing, leaving stocking numbers and periods of use unchanged. The decision authorizes "reconstruction/electrification" of the existing allotment boundary.

39.     As depicted in the *EA,* both French Coulee and Garey Coulee contain STLs. Figure C. According to the *EA,* STLs in Garey Coulee and French Coulee

are fenced in common with BLM and private land. If bison are released on Garey Coulee and French Coulee per the *BLM Decision,* there is no fence to confine them to BLM and private lands and they will access STLs. Figure C depicts the location of fences examined in the *EA*. Only existing allotment boundary fences for Garey Coulee and French Coulee were authorized for "reconstruction/electrification."

40.     The *BLM Decision* implements Alternative C for East Dry Fork Allotment. No conversion to bison grazing, changes to stocking numbers or periods of use, or changes to allotment fencing are authorized by the *BLM Decision*.



Figure C: Excerpt from *EA* at Appx.A, page A-3, depicting Alternative C.

## *French Coulee and Garey Coulee Plans Relied on by IBLA*

41.     The Heidebrink Declaration produced in the course of IBLA proceedings states that APR could successfully exclude bison from STL on French Coulee, given that the parcel is fenced on three sides and that APR could construct a fence on the fourth side. This fourth fence is not contemplated by the *EA*.

42.     On Garey Coulee, the declaration states that APR will build fences on three sides of the small STL parcel within the allotment and rely on existing fence for the fourth side. However, the three proposed fences were not contemplated by the *EA*, and the fourth fence fails to protect STL from bison utilizing the allotment. Nevertheless, IBLA relied on APR's statements to conclude that APR will keep bison off STL in French Coulee and Garey Coulee, preventing harm to Montana. Ex.B at 19.

43.     None of the alternatives considered by the *BLM Decision* included the fencing and grazing plan relied upon by IBLA to conclude that the State would not suffer immediate and irreparable harm.

-------------------

44.     OHA's failure to stay the *BLM Decision,* pending administrative appeal, was arbitrary, capricious, and a violation of the law. While OHA's determination acknowledged Montana's likelihood of success on the merits as sufficient to sustain stay, OHA erroneously found that Montana had failed to

demonstrate a "likelihood of immediate and irreparable harm." Ex.A at 16-20, 40-41; Ex.B at 5, 19. This error is painfully apparent on Whiterock, Flat Creek, French Coulee, and Garey Coulee. Its undisputed that under the alternative approved by the BLM Decision for each of these allotments, APR would be unable to prevent harm to the STLs, as those lands are fenced in common with BLM and private lands, making trespass inevitable.

45.     Accordingly, APR devised a new grazing and fencing plan before IBLA to remedy that immediate and irreparable harm. The new grazing and fencing plan was not included as any of the alternatives evaluated by the *BLM Decision*. In allowing APR to fence bison off STLs and utilize allotments in a new, unanalyzed manner, IBLA allows grazing to occur in contradiction to the action permitted by the *BLM Decision* and analyzed under NEPA and in violation of the law. IBLA's decision to rely on an unvetted fencing scheme, in an attempt to prevent harm to Montana, is particularly troubling considering the conclusion that Montana is likely to prevail on its substantive argument that the *BLM Decision* failed to adequately analyze the fencing regime in the alternatives ***actually*** considered and approved.

46.     The unanalyzed action condoned by IBLA utterly failed to exclude APR's bison from STL, resulting in the exact harm it was purportedly intended to mitigate. APR's deliberate decision to open gates and give bison access to STL, in

violation of Montana's direction, highlights the vulnerabilities in IBLA's hasty,

unanalyzed decision. Montana seeks judicial review of the IBLA decision denying

Montana's requested stay.[8]

## V.     <u>LEGAL FRAMEWORK AND STANDARD OF REVIEW</u>

47.     NEPA creates a "set of action-forcing procedures that require that

agencies take a hard look at environmental consequences" before taking action.

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (cleaned

up). NEPA requires all federal agencies to undertake a thorough and public

analysis of the environmental consequences of proposed federal action. NEPA

serves two principal purposes:

> It ensures that the agency, in reaching its decision, will have available,
> and will carefully consider, detailed information concerning
> significant environmental impacts; it also guarantees that the relevant
> information will be made available to the larger audience that may
> also play a role in both the decisionmaking process and the
> implementation of that decision.

*Id.*

48.     Focusing an agency's attention on a proposed project's environmental

consequences, NEPA ensures that impacts will not be "overlooked or

---

[8] During Montana's stay appeal to IBLA, the substantive merits of Montana's grazing appeal continued before DCHD in accordance with 43 C.F.R. §4.478(d) (an appeal to IBLA from a DCHD order denying a stay does not suspend further proceedings before DCHD). In the pending action before this Court, Montana only seeks review of IBLA's decision denying stay, as the merits of Montana's grazing appeal continue before DCHD.

underestimated only to be discovered after resources have been committed or the

die otherwise cast." *Id.*

49.     Pursuant to BLM rules, a party appealing a BLM grazing permit

decision may petition OHA for a stay of that decision pending appeal by filing a

petition for stay alongside that appeal. 43 C.F.R. §4.471(a). A petition for stay

must show sufficient justification based on the following standards: 1) the relative

harm to the parties if the stay is granted or denied; 2) the likelihood of the

appellant's success on the merits; 3) the likelihood of immediate and irreparable

harm if the stay is not granted; and 4) whether the public interest favors granting

the stay.  43 C.F.R. § 4.471(c). A stay must be granted if the four criteria are

satisfied. Petitioners need not "prove with certainty each criterion. Instead, a

petitioner must show that it likely meets each criterion." *Pueblo of San Felipe*, 187

IBLA 342, 345 (2016). However, the four-part test "is not a wooden one,

for....relief may be granted 'with either a high probability of success and some

injury, or vice versa.'" *Or. Nat. Desert Ass'n*, 135 IBLA 389, 393 (1996) (quoting

*Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 806 F. Supp. 275, 277 (D.D.C.

1992)).

50.     The APA provides a person adversely affected or aggrieved by an

agency action with the right to judicial review.  5 U.S.C. §702.  Pursuant to 5

U.S.C. §706(2), judicial review of an agency action requires courts to "hold

unlawful and set aside agency action" that is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
> accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or
> short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to
> sections 556 and 557 of this title or otherwise reviewed on the record
> of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to
> trial de novo by the reviewing court.

51.     An "arbitrary-and-capricious standard requires that agency action be

reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S.

414, 423 (2021). The agency must have acted "within a zone of reasonableness

and, in particular, [have] reasonably considered the relevant issues and reasonably

explained the decision. *Id.*  This Court is further authorized by the APA to "issue

all necessary and appropriate process to postpone the effective date of an agency

action or to preserve status or rights pending conclusion of the review

proceedings." 5 USC §705.

## <u>FIRST CLAIM FOR RELIEF:</u>

## OHA'S FAILURE TO GRANT PETITION FOR STAY VIOLATES NEPA, BLM RULE, AND THE APA

52.    Petitioner realleges and incorporates by reference all preceding paragraphs.

53.    OHA's denial of Petitioner's request for stay is a final agency action subject to review under the APA. *See also*, 43 C.F.R. §§4.21(d), 4.403(a) (IBLA decisions are final agency action and not subject to further administrative appeal).

54.    OHA's denial of Petitioner's request for stay, requested pursuant to 43 C.F.R. §4.471, was unreasonable, failed to consider relevant issues, is unsupported by substantial evidence, violates NEPA, and is arbitrary, capricious, an abuse of discretion, and in violation of the law.

55.    OHA erroneously concluded that Petitioner failed to demonstrate harm that is likely, immediate, and irreparable absent stay. The *BLM Decision* results in the physical trespass of bison on Whiterock, Flat Creek, French Coulee, and Garey Coulee. The *BLM Decision* infringes on Petitioner's fiduciary duty to control and make managerial decisions about the use of its STLs. These are clear, immediate, and irreparable harms to the Petitioner, and OHA's refusal to grant a stay is arbitrary, capricious, and in violation of the law.

56.     OHA's analysis of harm is erroneously limited to Whiterock and fails to consider the harm of the full *BLM Decision* as implemented on all subject allotments.

57.     In concluding that there was no likelihood of immediate and irreparable harm to STLs, OHA relied on APR's post-*BLM Decision* commitment to fence bison off STLs. Such actions are contrary to the *BLM Decision*, have not been scoped or examined in accordance with NEPA, and create harm to Petitioner. OHA's decision ignores these realities and is arbitrary, capricious, and an abuse of discretion and not in accordance with NEPA and its implementing regulations.

58.     The harm sustained by the Petitioner as a result of OHA's denial outweighs any harm that could be suffered by Respondents. Whether Respondents allow bison to trespass on STLs or allow APR to fence off STLs in violation of the *BLM Decision* and NEPA (which has still resulted in trespass on STL), the Petitioner is immediately and irreparably harmed.

59.     OHA's denial runs contrary to the public interest. The public's interest is preserved by a stay of the *BLM Decision*, as a stay ensures preservation of Montana's ability to exercise control over STLs, in accordance with its fiduciary obligations. *MONTRUST,* 1999 MT 263 at ¶¶13-17; *Bar K, LLC v. U.S.*, 2021 U.S. Dist. LEXIS 138141, *9-10 (D. Mont. July 23, 2021) (The Montana Constitution

clearly mandates that the State Board of Land Commissioners shall maintain and administer Montana's trust lands "in trust for the public…").

60.    There is a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *N.D. v. Reykdal,* 102 F.4th 982, 996 (9th Cir. 2024); *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013); *Tex. v. U.S.*, 40 F.4th 205, 229 (5th Cir. 2022); *Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991) (aff'd in part and rev'd on other grounds in 952 F.2d 297 (9th Cir. 1991)); *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.").

61.    In denying Petitioner's request for stay, OHA infringes on Petitioner's authority over STLs and violates NEPA by permitting an action not authorized by the *BLM Decision* or analyzed in the *EA*. Both are contrary to the public's interest.

62.    OHA's decision declining to stay the *BLM Decision*, pending appeal, is arbitrary, capricious, and a violation of the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court grant the following relief:

1.      A declaration that Petitioner demonstrated the criteria for a stay of the *BLM Decision* on Whiterock, Flat Creek, French Coulee, and Garey Coulee, pursuant to 43 C.F.R. §4.471, and that OHA's denial of Petitioner's request for stay was arbitrary, capricious, and a violation of the law;

2.      A declaration that OHA's denial of Petitioner's request for stay permits APR to take action in violation of NEPA;

3.      A declaration that the *BLM Decision* must be stayed, as a matter of law, on Whiterock, Flat Creek, French Coulee, and Garey Coulee pending OHA's administrative hearing on the merits;

4.      An injunction staying the *BLM Decision* until such time as OHA issues final disposition of Petitioner's appeals.

5.      Any other relief this Court deems just and reasonable.

Dated this 6th date of December, 2024.

*/s/  Rachel Meredith*
Rachel K. Meredith (MSB #11552)
Office of the Governor
1301 E. 6ᵗʰ Avenue
PO Box 200801
Helena, MT 59620-0801
Phone: 406-444-5503
Email: rachel.meredith@mt.gov
*Counsel for Petitioner*