Mary E. Cochenour
Cochenour Law Office, PLLC
7 West 6th Avenue, Suite 4F
PO Box 1914
Helena, MT 59624
(406) 422- 8716
mary@cochenourlawoffice.com

Jenny Harbine
Amanda D. Galvan
Earthjustice
1716 W. Babcock St.
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699
jharbine@earthjustice.org
agalvan@earthjustice.org

*Attorneys for American Prairie*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STATE OF MONTANA, BY AND THROUGH ITS GOVERNOR, MONTANA DEPARTMENT OF LIVESTOCK, MONTANA DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION, AND MONTANA DEPARTMENT OF FISH, WILDLIFE, AND PARKS, | Civ. No.: CV-24-107-GF-BMM **AMERICAN PRAIRIE'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD** |
| Petitioner, | |
| v. | |

Deb Haaland, IN HER OFFICIAL
CAPACITY AS Secretary of the
United States Department of the
Interior; THE UNITED STATES
DEPARTMENT OF THE
INTERIOR; TRACY STONE-
MANNING, in her official capacity
as Director of the United States
Bureau of Land Management; THE
UNITED STATES BUREAU OF
LAND MANAGEMENT, an agency
of the United States Department of
the Interior; and, KATHY TRIBBY,
Acting Field Manager of the Malta
Field Office of the United States
Bureau of Land Management,

     Respondents,

and,

AMERICAN PRAIRIE,

Intervenor-Respondent.

## INTRODUCTION

American Prairie opposes Montana's Motion to Supplement the

Administrative Record with exhibits and an affidavit that was signed

more than seven months *after* the agency decision subject to judicial

review in this action. Judicial review of an agency decision is limited to

the administrative record made at the time of the decision, except for

four narrow exceptions. Montana's post-decisional information does not

1

qualify for any of the four exceptions to this general rule on supplementation due to its post-decisional nature.

Given the timing of Montana's information, the supplemental materials can neither explain the agency's decision-making, nor shed light on whether the agency considered the relevant factors. The proffered information would serve to impermissibly second guess the agency's decision. Therefore, the Court should reject Montana's attempt to contaminate the administrative record with Montana's one-sided, post-hoc rationalizations.

## BACKGROUND

### I.    AMERICAN PRAIRIE

American Prairie is a Montana-based nonprofit organization dedicated to preserving the iconic landscape of the Great Plains. APR001222. In furtherance of its goals, over the last two decades, American Prairie has purchased private properties at fair market value, opening access to the public while also restoring and supporting a healthy prairie ecosystem. *Id.* Returning bison to the landscape is a critical component to the organization's commitment to conservation of Montana's species-rich prairie. *Id.*

American Prairie first introduced bison to its private properties in Phillips County, Montana in 2005. APR001235. American Prairie's bison were originally sourced from brucellosis-free, wild herds in South Dakota, Canada, and Iowa. APR001224. Today, American Prairie's bison number more than 800 animals and are classified and managed as livestock under Montana law. APR000995.

In addition to its private lands, American Prairie leases state and federal lands. *Id.* In turn, the organization leases some of these lands to area ranchers who graze almost 10,000 cattle on American Prairie's deeded and leased properties. *Id.* The federal allotments are important to American Prairie's bison because they provide space and forage to grow the organization's herds to genetically viable population numbers. APR001227-28.

In 2014, American Prairie received permission from the United States Bureau of Land Management (BLM) to change use on its Box Elder and Telegraph Creek grazing permits to include bison grazing. APR001229. The State of Montana also approved bison grazing on the state trust lands leased by American Prairie within the two federal allotments. APR00952-53. In approving bison grazing on Telegraph and

Box Elder Allotments, Montana accepted the BLM's environmental analysis instead of performing its own analysis under the Montana Environmental Policy Act. With federal and state approval, American Prairie's bison have been grazing on these two federal allotments and nearby state trust lands since 2014. APR00952. Though American Prairie carries an enviable compliance record, and there have been noted improvements to the rangeland due to the return of bison as a native species, Montana recently changed its position on American Prairie's bison grazing on state trust lands. Montana now seeks to overturn BLM's 2022 Final Decision, permitting American Prairie to graze bison, in addition to cattle, on the six federal allotments.

## II.    FINAL DECISION

On July 28, 2022, after a years-long review process that included robust public commenting and an in-depth environmental analysis, the United States Bureau of Land Management (BLM) issued a Final Decision, permitting American Prairie to change its use from cattle grazing to domestic indigenous livestock (bison) grazing on six BLM grazing allotments in north-central Montana (Telegraph Creek, Box Elder, Flat Creek, Whiterock Coulee, French Coulee, and Gary Coulee).

APR004181-4228 (Notice of Final Decision).[1] The Final Decision also allows American Prairie to modify portions of fencing and alter grazing management practices on some of the allotments. *Id.* These changes applied to BLM grazing permits already held by American Prairie.

## III.  ADMINISTRATIVE ACTIONS

On August 26, 2022, the Governor of Montana (Montana), the Attorney General of Montana, and the South and North Phillips County Cooperative Grazing Districts along with the Montana Stockgrowers Association (together, "Appellants") filed timely administrative appeals of the Final Decision and requested a stay of the BLM Final Decision, under 43 C.F.R. §§ 4160.1-4160.4.[2] In the request for stay, Montana argued that bison grazing on the federal allotments would increase the risk of alleged harms on state trust properties associated with the federal allotments and violate the State's fiduciary duties to properly manage those state trust lands. APR001503-05; 001512.

---

[1] The Final Environmental Assessment was not included in the administrative record. Montana filed a motion to complete the administrative record, including by adding the Final Environmental Assessment. Dkt. 27 at 3.

[2] After OHA denied the stay, on October 18, 2022, the Farm Bureaus intervened in the appeals of the Final Decision as appellants.

On October 13, 2022, the Department of Interior's Office of Hearings and Appeals, Departmental Cases Hearings Division (DCHD) denied Appellants' request for stay "because Appellants have not adequately demonstrated the likelihood of immediate and irreparable harm if a stay is not granted." DCHD Or. Den. Pet. For Stay (Oct. 13, 2022), APR008540 ("DCHD Or."). The administrative law judge ("ALJ") concluded that Appellants' claims of likely, immediate and irreparable harm were "not adequately developed" or "supported by marshalled evidence." DCHD Or., APR008558. The ALJ noted, specifically, that the state continues to lease state trust land to American Prairie to graze bison, which the OHA found undermined the state's claims of irreparable harm as a result of bison grazing on state trust lands. APR008577.

The ALJ permitted Appellants to re-petition for stay "should APR convert the Flat Creek, French Coulee, and Garey Coulee Allotments to bison grazing while these appeals are pending." APR008558. To date, American Prairie has not converted these allotments to bison grazing. The only allotments that have American Prairie bison grazing on them are Whiterock Coulee, Telegraph Creek, and Box Elder.

Following the DCHD's Order denying stay, on October 27, 2022, Montana sent a letter to American Prairie prohibiting bison grazing on state trust lands associated with the Whiterock, Flat Creek, French Coulee, and Garey Coulee allotments. APR000911-12. Montana would continue to allow bison grazing on state trust lands associated with Telegraph Creek and Box Elder Allotments, as it had done for years.

American Prairie holds and pays for grazing leases for cattle on the state trust lands associated with Final Decision. In conjunction with its application to convert federal grazing use to bison, American Prairie also applied to convert use to bison grazing on its state trust leases. After the Final Decision was issued in 2022, and after its request for a stay was denied by the administrative law judge (ALJ) at the DCHD, Montana decided to prohibit bison grazing on state trust lands within the four allotments.

To comply with Montana's *de facto* stay of bison grazing on state trust lands, American Prairie agreed to leave some fencing in place that was slated for removal under the Final Decision and to build fencing on its deeded lands to prevent bison from grazing on the state trust lands.

American Prairie's deeded properties are not subject to regulation or environmental review under the Final Decision. APR000915-19.

The DCHD's Order denying the Appellants' stay petitions made BLM's Final Decision operative, and therefore a final agency action subject to judicial review by the federal court under the Administrative Procedure Act ("APA"). However, Appellants chose not to seek judicial review of the Final Decision and, instead, continued with their appeals on the merits before the agency. Those appeals are fully briefed and ripe for decision by the DCHD's ALJ.

Appellants also appealed the DCHD Order denying stay to the next level of administrative review, the Interior Board of Land Appeals (IBLA). On May 29, 2024, the IBLA affirmed the DCHD Order denying Appellants' request for stay, finding no error in the ALJ's reasoning. ("IBLA Or.") APR000342-362. The IBLA specifically noted that the "Governor's general concerns about bison grazing were 'undermined by the fact that APR holds [State lease #8124] that authorizes bison grazing' on State trust lands within the Box Elder Allotment." IBLA Or., APR000358-59. The IBLA affirmed denial of the stay because Appellants "have not demonstrated error in the ALJ's ruling that

Appellants failed to show a likelihood of immediate and irreparable harm." IBLA Or., APR000362. The IBLA further acknowledged that Appellants could re-petition the OHA for a stay if circumstances changed. IBLA Or., APR000350.

## IV. PETITION FOR JUDICIAL REVIEW AND MONTANA'S RE-PETITION FOR STAY BEFORE THE ALJ

On December 6, 2024, Montana filed its complaint for judicial review of the IBLA Order denying its petition for stay. Dkt. 1. The parties, agreeing that this case involved review of the administrative record only, waived discovery and other procedural requirements. Dkt. 22 at 2. American Prairie would not have waived its participation in discovery if it had known that Montana would attempt to supplement the administrative record with its version of post-decisional events that occurred more than two years after the Final Decision was issued. American Prairie contests the facts in Montana's proposed supplemental information, including the declaration and attached exhibits.

On the same set of post-decisional allegations, on February 14, 2025, Montana also re-petitioned the ALJ to stay the Final Decision if

9

the decision is remanded to the agency without vacatur.[3] This motion to stay is based on the same allegations and information it seeks to supplement the administrative record in this case.

On May 30, 2025, the parties filed separate status reports in the administrative proceedings before the ALJ. Attached as Exhibits 1-4. Montana's status report argued that both cases—the review before this Court and the administrative action before the DCHD—should move forward at the same time because they are different proceedings. Montana asserted that judicial review of the IBLA's denial of the stay motion is a separate proceeding from the new motion to stay, filed by Montana in February before the ALJ. Now, Montana seeks to supplement the administrative record in this case with the same facts presented in its second motion to stay before the ALJ. If Montana's extra-record evidence is permitted, this Court and the ALJ will be deciding on the same issues at the same time, risking conflicting rulings.

---

[3] In the administrative case, on February 3, 2025, the BLM filed a Motion to Remand the Final Decision without vacatur so that it could review its decision. This motion is still pending decision by the ALJ.

# ARGUMENT

Montana should not be permitted to supplement the administrative record with one-sided, post-decisional information that did not exist at the time the agency made its decision. "[A] court reviewing agency action under the APA must limit its review to the administrative record" that was "in existence at the time of the decision." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (citing *Camp v. Pitts,* 411 U.S. 138, 142 (1973)); *Sw. Ctr. for Biological Diversity v. U.S.F.S.*, 100 F.3d 1443, 1450 (9th Cir.1996). Courts may supplement the administrative record with extra-record information only under four narrowly construed exceptions, including circumstances where the extra-record information: (1) is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) is necessary to determine whether "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Southwest Ctr.,* 100 F.3d at 1450). However, the

"exceptions to the normal rule regarding consideration of extra-record materials 'only appl[y] to information available at the time, not post-decisional information.'" *Tri-Valley CAREs v. United States DOE*, 671 F3.d 1113, 1129 (9th Cir. 2012) (citing *Rock Creek Alliance v. U.S. Fish and Wildlife Serv.*, 390 F.Supp. 2d 993, 1002 (D. Mont. 2005)).

The party seeking to supplement the administrative record bears the burden of demonstrating that one of these relevant exceptions applies. *Fence Creek Cattle Co. v. U.S. Forest Serv.,* 602 F.3d 1125, 1131 (9th Cir. 2010).

## I. MONTANA'S POST-DECISIONAL INFORMATION DOES NOT QUALIFY FOR ANY EXCEPTION TO THE GENERAL RULE AGAINST SUPPLEMENTATION.

The exceptions to the general rule against supplementation do not apply to Montana's request to supplement the record with post-decisional materials. *Tri-Valley CAREs v. United States DOE*, 671 F.3d at 1129. Montana attempts to supplement the record under the first exception "to determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council,* 395 F.3d at 1030 (cleaned up). But Montana cannot benefit from this exception because its supplemental information describes events that occurred *months*

*after* the agency issued the final order that is the subject of review by this Court.

The timing of Montana's supplemental information is key to this Court's decision on supplementation of the record. The IBLA Order subject to this Court's review was issued on May 29, 2024. APR000342-362. The affidavit that Montana seeks to supplement the record with was signed on December 31, 2024. Dkt. 29; Dkt. 29-1 (Decl. of Don Pyrah). The information in the affidavit and the attached exhibits describe Montana's version of events that occurred in September 2024. *Id.* Given the timing, Montana's post-decisional information does not qualify for any exception to the general rule that limits judicial review to the administrative record at the time that the agency made its decision. *Tri-Valley CAREs*, 671 F3.d at 1129.

Outside of the exceptions, Montana's post-decisional information must be viewed as post hoc rationalizations, which the Ninth Circuit prohibits. *See Southwest Ctr.*, 100 F.3d at 1450. In *Southwest Ctr.*, the Ninth Circuit rejected post-decisional documents where, like here, a party offered a letter dated a month after the agency decision was issued, arguing that the letter demonstrated "whether the [agency had]

considered all of the relevant factors" in its decision. *Id.* Seeing through the "relevant factors" argument, the Ninth Circuit concluded that such post-decisional information "may not be advanced as a new rationalization ... [for] attacking an agency's decision." *Id.* at 1451-52.

Similarly, the Court "may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *San Luis*, 776 F.3d at 993. This is exactly what Montana seeks to do here. Montana admits its purpose for supplementing the record is to "highlight the integrity of IBLA's analysis, or lack thereof" and to show "the ramifications" of the agency's final order. *See* Dkt. 29 at 8, 9. But this type of second-guessing of the agency's decision has been consistently denied by the Ninth Circuit. *Southwest Ctr.*, 100 F.3d at 1450; *see also Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 944 (9th Cir. 2006) (upholding District Court striking of extra-record evidence that was offered to cast doubt on the agency's decision). Similarly, in *San Luis & Delta-Mendota Water Auth. v. Jewell*, the Ninth Circuit held that a district court erred when it used extra-record declarations as a basis for judging the wisdom of the agency's analysis. 747 F.3d 581, 604 (9th Cir. 2014) ("*San Luis II*").

Montana's attempt to supplement the record here with post-decisional materials is no different than the attempts repeatedly rejected by the Ninth Circuit.

Importantly, American Prairie contests the facts advanced in Montana's declaration and exhibits, which is another reason why this post-decisional information cannot be considered in this Court's review. Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law that the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. Immigration & Naturalization Service*, 753 F.2d 766, 769 (9th Cir. 1985). The Court does not engage in a *de novo* fact-finding in judicial review of agency actions. *Id*. Here, adding Montana's contested and unadjudicated allegations that occurred *after* the agency made its decision would yank the Court out of its reviewing role and place it in fact-finding mode. Supplementation would "inevitably lead[] the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. U.S. EPA*, 616 F.2d 1153, 1159 (9th Cir. 1980).

Montana's arguments in favor of supplementing the record ultimately ignore the fundamental basis of APA review that "agency action must be examined by scrutinizing the administrative record at the time the agency made its decision." *Id.*

In summary, Montana's supplementation of the administrative record would be used to improperly advance the State's post hoc rationalizations "to determine the correctness or wisdom of the agency's decision." *Id.* at 1160; *see also San Luis,* 776 F.3d at 993. This type of supplementation is legally impermissible under long-standing Ninth Circuit precedent, and therefore Montana's motion should be denied.

## II. MONTANA'S EXTRA-RECORD EVIDENCE IS NOT NECESSARY TO DETERMINE WHETHER THE AGENCY CONSIDERED ALL RELEVANT FACTORS.

The exceptions to the general rule do not apply here, as discussed above, but even if they did, the administrative record refutes Montana's claim that supplementation of the record is necessary to show that agency failed to consider relevant factors in its decision. Supplementation of the record "operate[s] to identify and plug holes in the administrative record." *Lands Council,* 395 F.3d at 1030. No gaps or holes exist in the administrative record here. The administrative record

is replete with evidence that the agency considered all the relevant factors, including those factors regarding fencing plans and the potential for bison escape as raised in Montana's motion.

On multiple occasions, the agency carefully considered Montana's complaints of past and potential future instances of bison escape from American Prairie's grazing pastures. The agency considered the fencing scheme approved under the decision as well as American Prairie's fencing plans after Montana's spontaneous, post-decisional prohibition on bison grazing on some state trust lands, ultimately concluding *twice* that Montana's complaints failed to establish immediate and irreparable harm that would warrant a stay of the Final Decision.

The agency first considered fencing concerns and potential instances of bison escape during the public comment process, including bison leaving the federal grazing allotments and breaking through fencing. Public Comment Report at A-5 (addressing concerns regarding fencing sufficiency at containing bison); *id.* at A-13 (addressing commenter concerns regarding fencing modifications); *id.* at A-19

(addressing impacts from fence removal and concerns regarding bison escape)[4].

The agency considered Montana's complaints about project fencing and bison escape related to impacts to state trust land again in its consideration of Montana's and other Appellants' Petition for Stay of the Final Decision Pending Appeal. The ALJ concluded that these allegations were insufficient to establish the likelihood of immediate or irreparable harm. APR000358-59. The ALJ also considered allegations of the potential for bison to escape (APR008555, 008561-72); the risk of disease transmission from alleged bison escape (APR0008569); and the alleged threats of trespass and land deterioration as a result of the fencing scheme (APR008575-76). In each instance, the ALJ determined that the Appellants have failed to marshal the supporting evidence to substantiate these claims. Additionally, the ALJ specifically found that Montana's claims of immediate and irreparable harm to the state was

---

[4] As discussed *supra*, certain documents were not provided with the administrative record, including BLM's Public Comment Report. Montana has filed a motion to complete the record and requested that this document is added. Dkt. 27. For the Court's benefit, the Public Comment Report is attached to this brief as Exhibit 5 for reference.

"undermined by the fact that APR holds state lease 8124 that authorizes bison grazing." APR008577.

Montana contends that the supplemental information is necessary to show that the agency ignored American Prairie's fencing modifications as a result of Montana's prohibition against bison grazing on state trust lands. Not so. Montana's post-decisional ban on bison grazing and American Prairie's response were central arguments in the appeal of the stay decision to the IBLA. The IBLA considered Montana's ban on bison grazing, including Montana's letter from state employee Clive Rooney to American Prairie, notifying the organization of the prohibition against bison grazing (not trailing) on state trust land associated with four of the six allotments in the final decision. APR000907-937 (Rooney Decl.); APR000872-906 (Mont. Statement of Reasons). Ultimately, the IBLA held that "[a]lthough…[Montana] questions [whether APR's actions] will prevent unauthorized bison grazing on State trust lands...[Montana] has not satisfied [its] burden of proof." APR000360.

Based on the information in the administrative record, Montana's argument that IBLA "specifically ignored" relevant factors concerning

gates being left open and bison breaking through fencing is meritless.

The administrative record at the time of the IBLA's denial of stay is

"voluminous" and "sufficient" for this Court "to conduct the necessary

review under the APA." *Fence Creek Cattle Co.*, 602 F.3d at 1131.

## III. IN THE ALTERNATIVE, AMERICAN PRAIRIE SHOULD BE PERMITTED TO SUPPLEMENT THE RECORD WITH RESPONSIVE EVIDENCE.

As argued, *infra*, the law prohibits supplementing the

administrative record with Montana's proffered post-decisional

information. However, if the Court is inclined to permit

supplementation of Montana's extra-record information, it should, in

fairness, allow American Prairie to supplement the administrative

record with declaration and exhibits responding to Montana's

allegations. *See Hunters v. Marten*, 470 F. Supp. 3d 1151, 1169 (D.

Mont. 2020) (explaining that "[h]aving opened the door to extra-record

evidence, the Court holds it open to receive evidence necessary to reach

a decision" and allowing limited discovery and supplementation when

the Court admitted extra-record material).

While American Prairie maintains that supplementation of the

record is unwarranted in this case, it requests that if the Court permits

supplementation of the administrative record with Montana's post-decisional information, that the Court grant leave to American Prairie to submit its post-decisional information, including the declaration, attached as Exhibit 6, to rebut the contested allegations advanced by Montana.

## CONCLUSION

For the foregoing reasons, American Prairie respectfully requests the Court deny Montana's Motion to Supplement the Record. In the alternative, if supplementation of the record is permitted, American Prairie requests that the Court grant leave to American Prairie to supplement the record with its own evidence rebutting and further explaining Montana's post-decisional allegations.

Respectfully submitted this 13th day of June, 2025.

Mary Cochenour
Cochenour Law Office, PLLC
7 West 6th Avenue, Suite 4F
PO Box 1914
Helena, MT 59624
(406) 422- 8716
mary@cochenourlawoffice.com

Jenny Harbine
Amanda D. Galvan
Earthjustice
1716 W, Babcock St
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699
agalvan@earthjustice.org
jharbine@earthjustice.org
*Attorneys for American Prairie*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Local Rule of Procedure 7.1(d)(2)(E), I certify that the foregoing document is printed with a proportionately spaced Century Schoolbook text typeface of 14 points, is double spaced, and the word count calculated by Microsoft Word is 3,666 words excluding the caption and certificate of compliance.

Dated this 13th day of June 2025.

Mary Cochenour