# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| STATE OF MONTANA, BY AND THROUGH ITS GOVERNOR, et al., <br><br> Petitioner, <br><br> v. <br><br> DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior, et al., <br><br> Respondents. | CV-24-107-GF-BMM <br><br><br> ORDER ON <br> MOTION TO SUPPLEMENT <br> THE RECORD |

Plaintiff State of Montana ("Montana") filed a motion to supplement the administrative record on May 30, 2025. (Doc. 28.) Defendant Doug Burgum ("Burgum"), in his official capacity as Secretary of the United States Department of the Interior, opposes the motion. (Doc. 32.) Intervenor Defendant American Prairie Reserve ("APR") opposes the motion as well. (Doc. 31.) The Court denies the motion.

## BACKGROUND

The Bureau of Land Management ("BLM") issued a decision on July 28, 2022, renewing APR's grazing permits for six allotments in Phillips County,

1

Montana, including Telegraph Creek, Box Elder, Flat Creek, Whiterock Coulee, French Coulee, and Garey Coulee. APR004182–84. The permit approved the allotments for bison grazing. *Id*. The allotments are fenced in common with private lands and state trust lands. *Id*., at ¶¶ 7–10.

Montana appealed BLM's approval to the Interior's Office of Hearings and Appeals ("OHA") in August 2022 and petitioned for a stay of BLM's decision. APR001476–1579; APR001509–1514; APR001545–1549. Montana primarily argued that BLM's decision interfered with its ability to manage state trust lands as the APR permit would result in unauthorized bison on state trust lands. APR001480–81. OHA's Departmental Cases Hearings Division ("Hearings Division") denied Montana's stay petition on October 13, 2022. APR008577–78. The Hearings Division determined that Montana had failed to demonstrate immediate and irreparable harm. *Id*.

Around the same period, APR requested to graze bison on state trust lands in the Whiterock Coulee and Flat Creek allotments. The Montana Department of Natural Resources Conservation ("DNRC") denied APR's request on October 27, 2022. APR000908 at ¶ 2; APR000911–912; *see also* APR000878. DNRC's denial prohibited APR from grazing bison on Section 16, T26N R29E and other portions of the allotments including state trust lands. APR000908 at ¶ 2–3; APR000911–912.

Montana appealed the Hearings Division's decision to the Interior Board of Land Appeals ("IBLA") on November 14, 2022. IBLA affirmed the Hearings Division's denial of the stay petition on May 29, 2024. APR000362. Montana expressed concerns of APR's potential unauthorized use of state trust lands as bison could enter the area without fencing present to exclude them. APR000897–900. IBLA concluded that Montana had failed to prove its burden that unauthorized bison grazing was likely. APR000360. IBLA found convincing three assertions by APR. APR000350–60; *see also* APR000984–91 (Declaration of Scott Heidebrink). APR's first two assertions related to it building new fencing and retaining existing BLM fencing to pen the bison. *Id*. APR also asserted that it would delay bison grazing on some allotments. *Id*.

DNRC Northeastern Land Office Area Manager Don Pyrah ("Pyrah") executed a declaration ("Pyrah Declaration") on December 31, 2024, with the following information. (Doc. 29-1.) Pyrah inspected Section 16, T26N R29E on the Whiterock Coulee Allotment on September 6, 2024. (*Id*. at ¶ 5). Pyrah observed several open gates in an area intersecting state trust lands, BLM land, and APR's private land. (*Id*.) Pyrah further noticed a broken fence post and animal trails through the open gates. (*Id*. at ¶¶ 8, 11).

Pyrah contacted APR about his observations. (*Id*. at ¶ 12.) APR admitted in an email on September 9, 2024, to having trailed bison through the state trust land

section but stated that it had not used the section for grazing. (Doc. 29-6.) APR later notified Pyrah on October 3, 2024, that a bull bison had been jumping fences. (Doc. 29-1 at ¶ 15.) APR harvested the bull due to difficulties containing it in the designated pasture. (*Id*.) APR disclosed that it had found three open gates in sections intersecting with state trust lands. (*Id*. at ¶ 16.) APR "expressed concern that the gates [had] been opened by unknown third parties." (*Id*.)

Montana filed the present action on December 6, 2024. (Doc. 1.) The complaint challenges IBLA's denial of a stay. (Doc. 1.) Montana moves to supplement the administrative record developed before the IBLA with the Pyrah Declaration. (Doc. 28.)

## LEGAL STANDARD

An administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). An agency's designation of the administrative record is entitled to a presumption of regularity. *Goffney v. Beccerra*, 995 F.3d 737, 748 (9th Cir. 2021) (citation omitted). A party may rebut that presumption with "clear evidence" to the contrary. *See id.*; *see also Save the Colo. v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 899–900 (D. Ariz. 2021). A party meets the clear evidence standard in one of the following ways: "identify[ing] the allegedly omitted materials with sufficient specificity" and providing "reasonable,

4

non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Pritzker*, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (internal quotation marks omitted). A party also can meet the standard by "showing that the agency applied the wrong standard in compiling the record." *Id.*

## DISCUSSION

Montana contends that the inclusion of the Pyrah Declaration proves necessary to determine whether IBLA considered all relevant factors when it denied Montana's petition for a stay. (Doc. 29 at 7.) Defendants Burgum and APR oppose supplementation as the Pyrah Declaration postdates the challenged decision of IBLA and proves unnecessary to determine whether BLM considered all relevant factors. (Doc. 31 at 12, 16; Doc. 32 at 5–6.)

### I. Whether the Pyrah Declaration qualifies for supplementation.

Courts generally limit review of agency action to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005). Limited exceptions to this general rule exist. *See Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1058 (9th Cir. 2010). The Ninth Circuit has identified four circumstances where consideration of extra-record evidence would be appropriate: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record,

(3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council*, 395 F. 3d at 1030 (internal quotation marks and citation omitted). The exceptions "operate to identify and plug holes in the administrative record." *Id*. at 1030. The party seeking admission of extra-record evidence bears the burden of showing that an exception applies. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992–993 (9th Cir. 2014).

Evidence supplementing an administrative record may cover only information available during an agency's decision. *All. for the Wild Rockies v. Zinke*, 265 F. Supp. 3d 1161, 1175 (D. Mont. 2017) (quoting *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012)). For example, the court in *Alliance for the Wild Rockies* denied a party's attempt to supplement the administrative record with evidence dated after an agency's decision. 265 F. Supp. 3d at 1175. The plaintiffs had created the exhibits that it sought to supplement "after the [Fish Wildlife Services'] December 5, 2014 'not warranted' finding." *Id*. at 1175. The court excluded the additional reports and documents in main part because they contained information unavailable to the agency at the time the agency had made its determination. *Id*.

Montana seeks to advance evidence clearly covering information unavailable to BLM at the time of its decision. Like the reports and documents that postdated

the agency determination in *Alliance for the Wild Rockies*, the Pyrah Declaration postdates IBLA's decision. Pyrah executed his declaration on December 31, 2024, seven months after IBLA's decision. AR000360. The information contained in the Pyrah Declaration also postdates IBLA's decision. (*See* Doc. 29-1.)

Pyrah inspected the relevant state trust lands in September 2024. (*Id*. at ¶ 5.) Pyrah photographed the area during the inspection and included these photographs in the declaration. (Docs. 29-5 and 29-6.) Pyrah received communications from APR about trailing bison through the state trust land section and a bison bull jumping fences along state trust lands in October 2024. (*Id*. at ¶ 14.) Pyrah's observations and communications between Pyrah and APR occurred after IBLA had affirmed the Hearings Division. Based on this fact pattern, "supplementation under [the first exception] is not permitted." *All. for Wild Rockies*, 265 F. Supp. at 1175.

The general rule disfavoring supplementation of post-decision information ensures that parties abstain from using evidence to "advance[] a new rationalization either for sustaining or attacking an agency's decision." *See Sw. Ctr. for Biological Diversity v. U.S.F.S.*, 100 F.3d 1443, 1450–51 (9th Cir. 1996). The Ninth Circuit set forth the rule in *Association of Pacific Fisheries v. EPA*. 615 F.2d 794, 811–12 (9th Cir. 1980). The Ninth Circuit analyzed whether the evidence offered by a party proved "helpful in understanding the problem faced by the [a]gency and the

methodology it used to resolve it." *Id.* at 811. The Ninth Circuit noted that "if the [evidence] showed that the [a]gency proceeded upon assumptions that were entirely fictional or utterly without scientific support, then post-decisional data might be utilized by the party challenging the regulation." *Id.* at 812. The Ninth Circuit concluded that the proffered evidence failed to undermine the agency's "reasoned decisionmaking." *Id.*

Montana asserts that the Ninth Circuit's decision in *Association of Pacific Fisheries* allows courts to supplement the record with post-decision information that "clarif[ies] or [explains] the original information before the Agency" or demonstrates that the agency "proceeded upon assumptions that were entirely fictional or utterly without scientific support." (Doc. 34 at 3, quoting *Ass'n of Pac. Fisheries*, 615 F.2d at 811–12.) Montana also contends that *Bold Alliance v. United States Department of the Interior*, 572 F. Supp. 3d 946 (D. Mont. 2020), supports its position that courts may supplement the record with information postdating an agency's decision. (Doc. 34 at 7.)

*Bold Alliance* provides an example of evidence helpful to a court in determining whether an agency considered all relevant factors. The plaintiffs in *Bold Alliance* attempted to supplement the agency record with three documents to demonstrate that the BLM had issued a right-of-way across federal lands without

8

having considered all the relevant factors and to explain technical terms of complex subject matter. 572 F. Supp. 3d at 946. The plaintiffs also sought to supplement the record with documents related to BLM's issuance of a notice to proceed with construction on a segment of the project within the right-of-way. *Id*. The three documents postdated BLM's decision. *Id*. at 949. The court allowed supplementation of two of the documents and denied supplementation of the documents related to BLM's issuance of the notice to proceed. *Id*. at 950.

The two admitted documents included a technical study that explained the process of pipeline coating degradation and a report commissioned by the plaintiffs that examined the study's results. *Id*. at 947. The plaintiffs argued that supplementation proved necessary for the two documents because BLM had failed to "develop a record" addressing the plaintiffs' concerns that segments of the project had been impaired due to exposure over several years to sunlight and other weather. *Id*. at 948. The record presented no "technical analysis or any explanation of the coating issue." *Id*. The record remained "so inadequate that" the court determined "it would frustrate judicial review regarding whether [the agency] failed to consider the factor of pipeline degradation." *Id*. at 949.

The plaintiffs in *Bold Alliance* also sought unsuccessfully to supplement the administrative record with an expert report reviewing the oil spill response plans for

9

the project. *Id*. The plaintiffs argued that the report proved necessary "to determine whether the agency ha[d] considered all relevant factors and ha[d] explained its decision" and to "explain technical terms or complex subject matter." *Id.* (quoting *Lands Council*, 395 F.3d at 1030). The plaintiffs argued specifically that the report would provide analysis of whether the oil spill response plan adequately had considered the unique qualities of diluted bitumen ("dilbit"). *Id.*

Previous environmental reviews had "acknowledge[d] dilbit spills behave differently, and that conventional cleanup tactics are inadequate for detecting and containing submerged dilbit spills." *Id.* Numerous places in the administrative record considered the unique properties of dilbit. *Id.* The plaintiffs argued nevertheless to supplement the administrative record with the report to provide an evaluation of the importance of factoring dilbit into the emergency response plan. *Id.* The court rejected the request. *Id*. at 950.

The plaintiffs failed "to show what hole in the administrative record the [] [r]eport would fill." *Id.* The plaintiffs also failed to show what technical information the report would clarify and instead indicated that the report would help explain existing materials in the record. *Id.* The plaintiffs appeared to have commissioned the report instead to attack the merits of the agency's measures to address environmental issues. The "distinction between an affidavit that 'explains' complex

and technical material" compared to "an affidavit that characterizes the record with new expert opinion" is "critical" because the "former is allowed where the latter is not." *Id.* (quoting *Alsea Valley All. v. Evans*, 143 F. Supp. 2d 1214, 1217 (D. Or. 2001)).

The Court agrees that *Bold Alliance* proves helpful to this decision. Montana offers the Pyrah Declaration to demonstrate that IBLA failed to consider that APR would use state trust lands, that the enclosures would fail to contain the bison, and that third parties would leave gates open. (Doc. 29 at 6–7.) The arguments provided in favor of supplementation of the Pyrah Declaration more closely resemble the arguments and documents offered by plaintiffs in *Bold Alliance* to demonstrate that the agency failed to consider their concerns regarding dilbit spills rather than plaintiffs' arguments and proof involving coating degradation. The Pyrah Declaration provides no "technical analysis" of complex scientific terms undeveloped in the administrative record that the Court would need to understand to issue a decision in this case. *See Bold Alliance*, 470 F. Supp. 3d at 947.

The record as provided "would not frustrate judicial review regarding whether" IBLA failed to consider the potential effects of bison interfering with management of state trust lands. *Id.* at 949. The record also fails to demonstrate that IBLA "proceeded upon assumptions that were entirely fictional or utterly without

11

scientific support." *Fisheries*, 615 F.2d at 812. Furthermore, Defendants point to numerous places in the record where the agency considered the issue of adequate fencing for bison and the use of state trust lands instead of ignoring Montana's concerns. (Doc. 32 at 7, citing APR000984–91, APR003876–4055; Doc. 31 at 19–20, citing APR008555, APR008561–72, APR008575–76, APR0009–937 (Rooney Decl.), APR 000872–906 (Mont. Statement of Reasons).)

BLM conducted extensive public commenting and an environmental review of the area intersecting state trust lands, federal lands, and private lands. BLM responded to public comments on the adequacy of current fencing, planned fencing modifications, and fencing removal. Public Comment Report at A-5, A-13, and A-19. The Administrative Law Judge ("ALJ") in the initial Hearings Division decision determined that Montana's claims were "not adequately developed" or "supported by marshalled evidence." APR008558.

IBLA also addressed Montana's concerns in the final decision. APR000359–APR000360. IBLA relied only in part on APR's assertions that it would delay bison grazing on some allotments and improve fencing along the sections that connected with state trust lands. APR000350–60; *see also* APR000984–91 (Declaration of Scott Heidebrink). IBLA also considered Montana's ban on bison grazing and the fact that the federal allotments are fenced in common with state trust lands.

APR000359–360 (citing Governor of Mont. Statement of Reasons at 25). Besides this evidence, IBLA also weighed the potential for disease transmission and environmental injuries from fencing changes. APR000355–358; APR000361–362.

Montana now seeks to offer evidence that IBLA had no opportunity to consider in its review of Montana's petition for stay. Pyrah's declaration presented by Montana attempts to "characterize[] the record" in the form of facts regarding fencing and grazing practices on state trust lands. *Bold Alliance*, 572 F. Supp. 3d at 950 (quoting *Alesa Valley All. v. Evans*, 143 F. Supp. 2d 1214, 1217 (D. Or. 2001)). The fencing and grazing issues addressed in the Pyrah declaration arose months after the IBLA had issued its decision. The Pyrah Declaration itself was executed months after the facts contained it.

The Court sits in no position to engage in factfinding as the reviewing court. *See Occidental Engineering Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985) ("the function of the district court is to determine whether or not as a matter of law that the evidence in the administrative record permitted the agency to make the decision it did.") The information contained in the Pyrah Declaration, therefore, "may not be advanced as a new rationalization . . . for attacking IBLA's decision." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 11451–52 (cleaned up). Montana has failed to carry its burden for justifying

13

supplementation. The Pyrah Declaration proves unnecessary to fill any alleged holes in the administrative record and fails to support the claim that IBLA engaged in arbitrary and capricious decision making at the time it had made its decision. (Doc. 34 at 3–4.) The record adequately examines whether IBLA explained its decision based on all the relevant factors before it.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** Montana's Motion to Supplement the Administrative Record (Doc. 28) is **DENIED**.

DATED this 24th day of October, 2025.

_____
Brian Morris, Chief District Judge
United States District Court